CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 11 2013
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN B. KIMBLE, | CASE NO. 5:12CV00110 |
| Plaintiff, | |
| | REPORT AND RECOMMENDATION |
| v. | |
| DEAN WITHERS, et al., | By: B. WAUGH CRIGLER |
| | U.S. MAGISTRATE JUDGE |
| Defendants. | |

This action is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) on the defendants' November 27, 2012 motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim or, in the alternative, for a more definite statement to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the motions. By agreement of the parties in a proceeding before the undersigned, the parties presented evidence and consented to converting defendants' motion to dismiss to one for summary judgment. For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the defendants' November 27, 2012 motion to dismiss which, by agreement of the parties, should be converted to a motion for summary judgment, ENTERING judgment for defendant, and DISMISSING the case from the active docket of the court.

**PROCEDURAL BACKGROUND**

On October 11, 2012, plaintiff instituted this diversity action alleging negligence, breach of contract, and common law fraud and conspiracy. (Dkt. No. 1.) Neither the diversity of the parties' citizenship nor the amount alleged in controversy is in issue. (*Id.*)

On November 27, 2012, defendants moved to dismiss plaintiff's complaint or, in the alternative, for a more definite statement. (Dkt. No. 6.) By Order entered on December 3, 2012, the presiding District Judge referred all dispositive motions in this case to the undersigned to render a report and recommendation concerning their disposition. (Dkt. No. 10.) On December 13, 2012, plaintiff responded to defendant's motion and asserted that the claim was being brought on his mother's behalf, in his position as administrator of her estate. (Dkt. No. 11.)

Because from the face of the complaint it appeared that plaintiff was attempting to maintain a *pro se* action on behalf of another person, the undersigned entered an Order on January 8, 2013 giving plaintiff until January 31, 2013 to retain counsel and file an amended complaint. (Dkt. No. 15.) On February 5, 2013, having received no response from plaintiff, the undersigned recommended that the complaint be dismissed for failure to prosecute, which was adopted by the presiding District Judge on April 9, 2013 over the plaintiff's objection. (Dkt. No. 16, 18.)

Thereafter, the plaintiff moved for reconsideration on April 17, 2013. (Dkt. No. 19.) On May 23, 2013, the presiding District Judge granted plaintiff's motion for reconsideration and referred the case back to the undersigned to determine whether plaintiff had raised any claims personal to him and whether he could represent his mother's estate *pro se*. (Dkt. No. 20, 21.)

On July 2, 2013, the court entertained oral argument on defendants' November 27, 2012 motion to dismiss. At the hearing, the undersigned noted the defendants' appearance, deemed the allegations in the complaint denied, and, by agreement of the parties, adduced testimonial evidence outside the pleadings from plaintiff and from Neil Hayslett, the defendant's representative. By further agreement of the parties to convert defendants' motion, the undersigned will convert the motion to one seeking summary judgment. Fed. R. Civ. P. 12(d)

and 56. Before the proceedings concluded, the defendant moved, without objection, to submit additional post-hearing exhibits, which were filed on July 5, 2013. (Dkt. No. 26.)

**UNDISPUTED ALLEGATIONS AND FACTS ADDUCED OUTSIDE THE PLEADINGS**

Plaintiff, John B. Kimble, is the son of Kay Kimble and, according to his testimony before the undersigned, qualified in Maryland as administrator of her estate. Plaintiff asserts that he was an attorney-in-fact under a power of attorney for his mother. Dean Withers("Withers") is the CEO and Darlene Sites ("Sites") is an employee of the defendant F & M Bank Corp ("F & M" or "Bank").

According to the undisputed allegations in plaintiff's complaint and the evidence offered before the undersigned, Plaintiff is one of two children surviving the intestate death of Kay Kimble on October 6, 2010. Plaintiff testified that he qualified in Montgomery County, Maryland as the administrator of his mother's estate, and filed a non-certified copy of letters of administration. (Dkt. No. 11-1, at 1.) He stated that the sole heirs to her estate are his brother, Daniel Kimble, and himself. At the time of her death, Ms. Kimble owed less than $1,000 in credit card debt, and according to plaintiff, the creditors stopped pursuing payment after giving notice of the debt. Her principle assets consisted of Certificates of Deposit ("CDs") issued and held by defendant F & M, which were payable on death ("POD") to the plaintiff and his brother. Her residence had been placed in a trust for her lifetime with plaintiff and his brother being residual beneficiaries. There is no dispute that all balances outstanding on the CDs were paid to plaintiff and his brother upon proper proof of death.

The gravamen of the claims here relate to plaintiff's attempts to withdraw money from the CDs under an alleged power of attorney in order to pay the premiums for his mother's medical insurance prior to her death. Plaintiff alleges and testified that F & M refused to honor

3

his request as attorney-in-fact under a power of attorney to withdraw funds from one or more CD, as a result of which he was unable to pay for his mother's medical insurance. Plaintiff claims that his mother died on October 6, 2010, due to a lack of proper health care precipitated by a lack of medical insurance, which was caused by a lack of funds due to F & M's refusal of his request to withdraw the funds necessary to pay for medical insurance coverage.

Neil Hayslett, a 17 year veteran with F & M, testified that he had reviewed the Kimble bank files and found notes and CD information, including payout information together with various items of correspondence. According to Hayslett, Kay Kimble had been the owner of a checking account and three CDs: one for $85,000, one for $65,000, and one for $20,000. By the time of her death, two of the CDs had been combined. The CDs permitted premature withdrawal with a penalty, and each was payable on death ("POD") to plaintiff and his brother. Plaintiff was not a signatory on the CDs, but a power of attorney in favor of plaintiff had been on file with the bank, but it was cancelled in writing by Ms. Kimble in October 2008.

Hayslett stated that, on April 10, 2010, the Bank received a fax which purported to be from Ms. Kimble requesting a transfer of funds, but, by the nature of the communication, there was no original signature on the fax. On April 12, 2010, the Bank sent a withdrawal slip to Ms. Kimble for signature, which was returned. However, the signature did not match the signature on file. On April 16, 2010, the Bank received what purported to be a copy of a power of attorney dated June 2, 2009. Again, the version forwarded was a faxed copy which did not have an original signature or a notary certificate. According to its policy, the Bank declines to honor a request for funds by an attorney-in-fact without a document bearing an original signature and a notary certificate. Hayslett testified that Bank personnel offered to honor the request if plaintiff presented a certificated power of attorney.

4

On cross examination by plaintiff, Hayslett testified that Bank personnel did compare the signature on the copy of the power dated April 22, 2010 with the signature on the certificate of deposit and found the signatures to be "similar" but with "discrepancies." He further testified that the Bank never had been notified that Ms. Kimble suffered any mental impairment, and that it had received letters informing the Bank of potential fraud attempts on the account.

**CONVERTED MOTION FOR SUMMARY JUDGMENT**

Defendants maintain they are entitled to judgment as a matter of law, and that plaintiff's complaint should be dismissed for two reasons: 1) that the plaintiff's negligence claim and his common law fraud and conspiracy claim are time-barred; and 2) that plaintiff's breach of contract claim fails because plaintiff was not a party to any deposit contract with defendant. Plaintiff opposes dismissal on the basis that his claim should be considered filed when the complaint was placed in the mail and that the breach of contract claim is being asserted in his capacity as administrator of his mother's estate.

**APPLICABLE LAW, FINDINGS AND CONCLUSIONS**

**Summary Judgment Standard**

Summary judgment is appropriate if taking the evidence and all reasonable inferences drawn there from in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (emphasis in original). For a non-movant to present a genuine issue of material fact, "conclusory or speculative

allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Although summary judgment is "favored as a mechanism" to avoid an unnecessary trial, it "must be used carefully so as not...to foreclose trial on genuinely disputed, material facts." *Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322–23 (4th Cir. 1995). As stated by the Fourth Circuit, "the question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011).

**Negligence and Fraud Claims**

Plaintiff attempts to set forth three claims, two in tort and one in contract. Defendants assert that plaintiff may not bring a claim for breach of contract because plaintiff does not enjoy privity of contract with defendants. While it is undisputed that plaintiff had signatory authority over one of his mother's accounts, it is equally undisputed he had no signatory authority over either of the CDs at issue here. Accordingly, as a matter of law, plaintiff personal claim to bring for breach of contract under the circumstances of this case.

Defendants argue that plaintiff's tort claims for negligence and for fraud and conspiracy are time-barred. The statute of limitations for tort actions in Virginia is two years from the date the cause of action accrues. Va. Code § 8.01-243. Plaintiff's mother died on October 6, 2010, and any tort claim arising from her death, therefore, was required to be filed by October 6, 2012 or be barred by the statute of limitations. Plaintiff did not file his complaint until October 11, 2012, five days after the statute of limitations ran. While plaintiff cites the "mailbox rule" in support of his argument that his complaint was timely filed, that has been applied only to pleadings filed by *pro se* prisoners. *Houston v. Lack*, 487 U.S. 266, 270-271 (1988). The Fourth

Circuit has held that "the unincarcerated litigant who decides to rely on the vagaries of the mail must suffer the consequences if the [filing] fails to arrive within the applicable time period." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996). Because plaintiff's complaint was not filed until October 11, 2012, he is time-barred from bringing any tort claims based on Virginia law. Furthermore, plaintiff has not made any factual allegations in support of his fraud claim. Therefore, defendants are entitled to judgment on any tort claim plaintiff has asserted in this case, and it is RECOMMENDED their motion be GRANTED in this respect.

**Wrongful Death Claim**

Although plaintiff did not assert a wrongful death claim in his complaint, plaintiff has asked the court to construe his complaint as seeking damages for his mother's death allegedly caused by the conduct of the defendants in delaying the transfer of funds necessary to provide medical care for her. Therefore, the court should construe this action as one for wrongful death, and dismiss it for three reasons. First, as indicated above, a wrongful death claim must be brought within two years after the death of the decedent. Va. Code § 8.01-244(B). Therefore, any action for the alleged wrongful death of plaintiff's mother is time-barred.

Secondly, a plaintiff may not bring a wrongful death claim without the assistance of counsel. In Virginia, a claim for wrongful death "shall be brought by and in the name of the personal representative of such deceased person." Va. Code. § 8.01-50(C). The Supreme Court of Virginia has interpreted this to mean that "an administrator (or executor) is the *only* person with standing to sue under the Wrongful Death Act." *Addison v. Jurgelsky*, 704 S.E.2d 402, 404-405 (Va. 2011) (emphasis in original). Plaintiff has testified that he is the administrator of his mother's estate in Maryland, but he has not offered a single document demonstrating that he has

7

qualified as personal representative of his mother's estate in Virginia. A nonresident administrator must qualify in Virginia as the administrator of an estate before bringing a wrongful death action in Virginia. *Schieszler v. Ferrum College*, 236 F. Supp. 2d 602, 613 (W.D. Va. 2002). Even if plaintiff had qualified as the administrator in Virginia, plaintiff could not bring this action *pro se*. The Supreme Court of Virginia has held that the right of action, but not the cause of action, belongs to the decedent's personal representative. *Kone v. Wilson*, 630 S.E.2d 744, 746 (Va. 2006). Because the "personal representative merely acts as a surrogate for the decedent's beneficiaries," a wrongful death action is a representative action and may not be brought *pro se*. *Id.* Therefore, plaintiff may not pursue a wrongful death action here, at least, without counsel.

Finally, plaintiff also has claimed that his mother's death resulted from the defendants' alleged breach of contract. The Supreme Court of Virginia had held that "in determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). Plaintiff alleges that defendants breached their contractual duty to decedent when they failed to release her funds. Therefore, it is clear that plaintiff's claim sounds in contract. While "a party can, in certain circumstances, show both a breach of contract and a tortuous breach of duty," plaintiff here has not alleged that defendants owed any tort duty to decedent upon which a wrongful death action can be maintained. *Id.* Therefore, plaintiff's wrongful death claim fails because it asserts damages in tort for an action arising solely out of a contract. Defendants are entitled to judgment as a matter of law on the wrongful death claim allegedly arising out of breach of contract, and it is so RECOMMENDED.

### *Pro Se* Representation on Estate's Contract Claim

In plaintiff's response to defendants' motion to dismiss, he explained that he was bringing this case on behalf of his mother as administrator of her estate. (Dkt. No.11, at 1.) While generally only a lawyer may represent the interests of another individual in the federal courts, in some instances an administrator or executor may represent the estate of the deceased. In *Pridgen v. Andresen*, the Second Circuit suggested that the sole beneficiary of an estate with no creditors may present *pro se* claims of an estate. *Pridgen v. Andresen*, 113 F.3d 391 (2nd Cir. 1997). In *Witherspoon v. Jeffords Agency, Inc.*, the Fourth Circuit adopted the reasoning in *Pridgen* leaving the only questions to be whether the *pro se* litigant is the sole beneficiary, and whether the estate had other creditors.

Plaintiff acknowledged, both in his response to defendants' motion to dismiss and in his testimony at the hearing, that his mother was survived by her two sons and four grandchildren. (Dkt. No. 11, at 5.) Plaintiff further testified that there was an outstanding but unpursued claim against his mother's estate on an unsecured credit card debt, which the estate has not paid. Accordingly, it is undisputed that there are other beneficiaries than plaintiff to his mother's estate, and there is at least one unpaid creditor. Plaintiff's *pro se* action on behalf of the estate should be dismissed on this alternative basis, and it is so RECOMMENDED.

### Merits of Claim for Breach of Contract

The gravamen of the plaintiff's case is defendants' alleged refusal to transfer $6000 from a CD owned by plaintiff's mother into her checking account over which plaintiff had signatory authority.

The undisputed evidence shows that, in letters to defendant Sites dated August 25, 2007, January 13, November 30, December 10, December 24, and December 26, 2008, plaintiff's

9

mother declared that she had not granted anyone a power of attorney over her affairs. (Dkt. No. 26-4, at 7, 10, 17, 18, 19, 21.) In a letter dated May 7, 2009, plaintiff's mother specifically stated that she had not granted "the internet lady" a power of attorney. (*Id.* at 24.) On April 9, 2010, the Bank received a letter from plaintiff's mother which did not appear to bear a physical signature but requested a withdrawal of $6600 from a CD into her checking account. (*Id.* at 27.) On April 12, Sites faxed a partial withdrawal form requesting a signature, but on April 15, 2010, instead of returning a signed form, plaintiff faxed a copy of what purported to be a durable power of attorney. (*Id.* at 28, 30.) The power of attorney, which was dated June 2, 2009, was not notarized and bore the same style of signature as the April 12 letter, neither of which matched any of the other signatures from plaintiff's mother on file with the Bank. (Dkt. No. 26-3, at 3.) Defendant Sites informed plaintiff that the Bank required an original, notarized copy of the power of attorney, but that she could make the withdrawal if she spoke personally with plaintiff's mother by telephone. (Dkt. No. 26-4, at 29.)

On August 10, 2010, plaintiff sent a letter asking why the money had not been transferred. (Dkt. No. 26-4, at 31.) On August 12, 2010, defendant Sites informed plaintiff that he could be named conservator for his mother or return a notarized certification of power of attorney. (*Id.* at 32.) On August 24, 2010, plaintiff was informed that, instead of having the certification form notarized, a power signed by two witnesses who were not related would be acceptable. (*Id.* at 34.) By letter dated September 25, 2010, plaintiff stated that he had not yet returned the certification because the attorney was asking for too much money to start a conservatorship or have the certification form witnessed. (*Id.* at 35.) Plaintiff's mother died on October 6, 2010, and on October 9, 2010, the defendant and his brother received the money from the CDs under the payable on death clauses.

Given the undisputed facts in this case, it is clear that the Bank had reason to doubt the validity of plaintiff's power of attorney. The plaintiff's mother declared numerous times that she had never granted anyone a power of attorney over her. The defendant tried numerous times to work with plaintiff to receive some form of communication from plaintiff's mother upon which it could confirm that the power of attorney was valid. Defendant Sites asked to speak with her by phone, requested that the certification be notarized or signed by two witnesses, and even suggested that plaintiff obtain a conservatorship. Although plaintiff alleges that there was a second power of attorney executed in 2010 with a valid signature, that document never has surfaced and has not been offered as evidence in this case.

Under the circumstances, plaintiff cannot establish a contractual duty on the part of the Bank which the defendants breached. Notwithstanding any bar to plaintiff's bringing a *pro se* action in a representative capacity without counsel, as a matter of law, he cannot establish a claim in contract upon which relief can be granted. Defendants are entitled to summary judgment on plaintiff's contract claim, and it is so RECOMMENDED.

**SUMMARY**

For the reasons set forth above, it hereby is RECOMMENDED that the defendants' November 27, 2012 motion to dismiss, which should be converted to a motion for summary judgment, be GRANTED, that judgment should be ENTERED for the defendants, and that the case should be DISMISSED from the active docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not

specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record and to plaintiff at his last known address.

ENTERED: _____
United States Magistrate Judge

9-11-2013
Date